Iowa Bonding & Casualty Company, Appellant, et al., Appellee, v. Wagner Company et al., Appellees.

INSURANCE: The Contract—Construction—Effect of Reinsurance. A
1  contract performance bond which, in effect, binds the insured to reimburse the insurer and any *reinsurer* for any loss which the insurer or reinsurer may be compelled to pay, is not multiplied or divided by a subsequent reinsurance contract. In other words, the liability of the original insured remains a *single* liability, and the risk carried by both insurers remains as *one* risk.

INSURANCE: Reinsurance—Settlement with Insured—Effect. A re-
2  insurer who agrees that the reinsured shall take charge of all matters arising under the bond, and effect all settlements, is bound by a settlement entered into between such reinsured and the original insured.

PRINCIPAL AND SURETY: Discharge of Surety—Settlement with
3  Principal. Principle reaffirmed that a contract of settlement which releases a principal *ipso facto* releases the surety.

Headnote 1:  31 C. J. p. 429 (Anno.); 33 C. J. p. 52.  Headnote 2:  33 C. J. p. 57.  Headnote 3: 32 Cyc. pp. 151, 154.

Headnote 3: 21 R. C. L. 1045.

*Appeal from Polk District Court.*—Joseph E. Meyer, Judge.

November 16, 1926.

Rehearing Denied February 19, 1927.

The plaintiffs are bonding companies. They brought this suit for indemnity for loss sustained by them upon a contract of insurance whereby they insured the Wagner Company, defendant, and guaranteed performance by it of a paving contract in the city of Des Moines. The defendants the Wagner Company and Charles W. Wagner pleaded in defense a full settlement of all indemnity and a discharge of liability. The other defendants pleaded as a defense that they were mere indemnitors or sureties for the Charles Wagner Company, and that they were entitled to the benefit of the settlement entered into by the plaintiffs with the Charles Wagner Company. A trial being had on the merits, the court awarded a decree to the defendants. Only the Iowa Bonding & Casualty Company has appealed.— *Affirmed.*

*Miller, Kelly, Shuttleworth & McManus,* for appellant.

*Parrish, Cohen, Guthrie & Watters,* for E. H. Hoyt, Receiver for Lion Bonding & Surety Company, appellee.

*Stipp, Perry, Bannister & Starzinger,* for defendants, appellees.

Evans, J.—I. In November, 1917, the Wagner Company was awarded a paving contract, known in the record as the "Douglas Avenue Contract," in the city of Des Moines. It thereupon applied to the plaintiff Lion Bonding & Surety Company to insure its performance of its contract. Such plaintiff issued its bond accordingly. This suit is brought upon the breaches of such bond by the Wagner Company. The Lion Bonding & Surety Company reinsured one half the risk with the Iowa Bonding & Casualty Company, its coplaintiff. The total loss sustained under the insuring bond was somewhat more than $14,000. This was borne equally, in the first instance, by the two plaintiffs. The insuring contract issued by the Lion Bonding & Surety Company required the applicant to furnish

1. INSURANCE: the contract: construction: effect of reinsurance.

indemnitors. The Empire Construction Company (a corporation) and the Raymond Wright Company (trade name) were named as such indemnitors, and they indorsed the application of the Wagners as such indemnitors. There is some dispute between the parties as to whether the liability of these latter was secondary or primary, the plaintiffs contending that they were principals to the contract, and were in no sense sureties or indemnitors. We think that the contract entered into and the written application pursuant to which the contract was entered into by the plaintiffs are quite conclusive on that question. If we turn to the application, the answer to Interrogatory 1 shows the Wagner Company as sole applicant. The answer to Interrogatory 22 names the Empire Construction Company and the R. H. Wright Company as indemnitors. The Wagner Company purported to sign the application as "applicant." No such designation was attached to any other signer. The Raymond H. Wright Company appended to the contract the following statement, over its signature: "We hereby join in the above indemnity agreement." For the purpose of further discussion, therefore, we shall treat the Wagner Company as the principal applicant for the insurance, and the other two signers as indemnitors. It appears that Charles W. Wagner was the principal owner of the Wagner Company, and the identity of the two entities has been quite merged in this record. We shall, therefore, make no distinction between them. Wagner and his corporation became insolvent while owing a large indebtedness arising out of the performance of the "Douglas Avenue Contract." Negotiations were entered into between him and his insurer, the Lion Bonding & Surety Company, whereby it was sought to reduce the loss resulting to the insurer to the lowest possible amount. A written agreement was entered into, whereby Wagner turned over to the insurer all the property which he had, reserving only certain tools and implements, but including corporation stock and choses in action and certain benefits already accrued from executory paving contracts in course of performance. It was further provided that Wagner should pay the sum of $5,500 to his insurer. This contract was fully performed by Wagner. In order to perform the same, it was requisite that he mortgage his homestead, for the purpose of borrowing the amount necessary to make the cash payment.

One of the inducements which operated on both parties was that Wagner was otherwise contemplating bankruptcy proceedings. This is the contract that is pleaded in defense. The Lion Bonding & Surety Company joined with its coplaintiff in this action. But the testimony of its official who negotiated the agreement with Wagner tended strongly to support the defense. The Lion Bonding & Surety Company has not joined in the appeal to this court, and we have, therefore, no occasion to further consider the defense pleaded as against it. The Iowa Bonding & Casualty Company will hereinafter be referred to as plaintiff.

The whole controversy, as between the plaintiff and the defendant, centers upon the validity of the defense pleaded. The contentions of the plaintiff in that regard are: (1) That the contract entered into was not binding upon it, because it was not a party thereto; (2) that the Lion Bonding & Surety Company had no authority to represent it, or to bind it to the contract thus entered into; (3) that, though the contract were deemed effective to release Wagner from further liability, it was not effective to release the indemnitors.

The third and fourth paragraphs of the insurance contract are as follows:

"Third: That in the event said company executes said bond, or bonds, with *co-sureties*, or reinsures any portion of said bond or bonds with *reinsuring companies*, or procures the execution of said bond or bonds, the undersigned agrees that all of the terms and conditions of this agreement shall apply and operate for the benefit of the company, the procured surety, the *co-sureties*, and such *reinsuring companies* as their interests may appear.

"Fourth: That the undersigned, in further consideration of the company becoming surety as above, does hereby covenant and agree to indemnify the said company and save it wholly harmless against all loss, costs, damage, charge and expense that may accrue to it, whether sustained or incurred by reason of any act, default, or neglect of the undersigned, or on account of claims made under or in connection with the said bond, or any extension or continuation thereof, hereby agreeing to repay to the said company all such loss, cost, damage, charge and expense, including the fees and compensation and expense of

any or all attorneys and agents employed by it to investigate or adjust such claims.''

The plaintiff relies upon the foregoing as constituting a distinct contract between itself and the insurer. The argument is that Paragraph Third was effective to create an independent contract between the reinsurer and the insured, and that the rights of the reinsurer thus created could not be impaired by any arrangement between the insured and his insurer. On the other hand, the contract of reinsurance entered into between the plaintiff and the Lion Bonding & Surety Company contained the following section:

''Section 5. The reinsured shall take charge of all matters arising under the bond. It shall decide whether or not it is liable thereunder, and shall determine the amount of its liability in case it decides that it is liable. It shall settle or compromise any claims, and defend, settle or compromise any suits, and take such other action, not involving the extension of credit or the advancing of money, in connection with any claim matter arising under the bond, as it may deem advisable. Any such decision, determination, settlement, defense, compromise, or other action of the reinsured in connection with any claim matter arising under the bond shall be final and conclusive and unconditionally binding upon the reinsurer; provided that no payment or other method of settlement by the reinsured shall preclude the reinsurer from showing that the alleged liability or any part thereof for loss under the bond exists or existed under any other bond or bonds given at any time by the reinsured.''

The contention for the appellees is that, by virtue of this contract of reinsurance, full power was conferred upon the reinsured company to represent the reinsurer, as well as itself, in all matters of controversy as defined in such Section 5. We do not think that the reinsurance contract had the effect either to multiply or to divide the contract of the original insured. His liability continued as a single liability, and the risk carried by the insuring companies continued as a single risk. True, profit or loss was to be divided between them, but that was a matter wholly between themselves. It could not have the effect of splitting the cause of action, if any, against the insured, or the cause of action, if any, in favor of his creditors. Paragraph Third above

2. INSURANCE: reinsurance: settlement with insured: effect.

quoted contains nothing that necessarily runs counter to this holding. The practical purpose and operation of this Paragraph Third may be illustrated as follows: Suppose there had been no settlement with Wagner, and that the Lion Bonding & Surety Company had sued him and his indemnitors for $14,000, being the amount of the loss sustained by the insurer. The defendants could not, in such a case, contend that, because of reinsurance, the Lion Bonding & Surety Company had sustained a loss of only $7,000, and not $14,000. Paragraph Third means that the liability of the indemnitors continues for the full amount of the loss, regardless of whether it was borne by the original insurer or by reinsurers. It does not create an independent cause of action in favor of each separate reinsurer, nor does it render it necessary that reinsurers should be joined as plaintiffs with the original insurer. The Lion Bonding & Surety Company had a right at all times to maintain an action in its own name for the full amount of the loss, without naming the reinsurer, and without being subject to defense on the ground that a reinsurer had borne part of the loss. We reach the conclusion that, in the negotiations and contract between the Lion Bonding & Surety Company and Wagner, it must be considered as representing the insurance which it contracted to give, regardless of whether it had reinsured its loss or not. And this is the real purport of Section 5, which we have quoted above. Under this contract, the right of one company can rise no higher than that of the other, nor can the liability of one for a loss be any greater or less than that of the other. Whatever is done by the insurer in his negotiations with the insured operates, as a matter of law, both to the burden and to the benefit of the other. The insured is not bound to seek out reinsurers and to obtain their independent consent to adjustments and negotiations which he would otherwise be entitled to carry on with the party with whom he contracted. We hold, therefore, that the contract entered into by the Lion Bonding & Surety Company was as binding upon the plaintiff as it was upon itself. It may be further added that the plaintiff took the full benefit of the contract, and that such benefit could not have inured to it without the contract and its performance by Wagner. Though, therefore, the plaintiff has in terms purported to repudiate the

contract, it has in fact clung to its benefits, and has tendered no rescission.

II. It is urged by plaintiff that, even though the contract in question were effective to release Wagner, it does not follow that it is effective to release his indemnitors. In support of this contention, it suggests the analogy that, if Wagner had gone into bankruptcy, and had been discharged, such discharge would not operate to release his sureties upon any obligation. It argues, therefore, that a contract of release could have no other or greater effect than a discharge in bankruptcy. This presents a *non sequitur*. The fact that the discharge of a principal in bankruptcy does not operate to release a surety furnishes no ground for saying that a contractual release of a principal is likewise ineffective to release a surety. The law is well settled otherwise. The general rule is that a surety may set up any defense that is available to the principal. If the plea of a discharge in bankruptcy is to be regarded as a defense, then the most that can be said is that it furnishes an exception to the general rule. Indeed, a discharge in bankruptcy is not strictly a defense to the cause of action. It may well be regarded as simply a legal bar to any remedy. Be that as it may, the fact remains that any valid contract entered into with the principal which operates to his release from liability operates in like manner in favor of his sureties.

The judgment below must, accordingly, be affirmed.—*Affirmed*.

De Graff, C. J., and Albert and Morling, JJ., concur.

*3. Principal and Surety: discharge of surety: settlement with principal.* (margin note)